# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELM 3DS INNOVATIONS, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-1430-LPS-CJB |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG SEMICONDUCTOR, INC., a California corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG AUSTIN SEMICONDUCTOR, LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPORT AND RECOMMENDATION**

At Wilmington this **29th day of September 2015**, having reviewed Defendants Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Samsung Electronics America, Inc. and Samsung Austin Semiconductor, LLC's (collectively, "Defendants" or "Samsung") "Motion to Dismiss Plaintiff's Induced Infringement Claims Pursuant to Fed. R. Civ. P. 12(b)(6), or, in the Alternative, 12(c)" ("Motion"), (D.I. 25), and the papers filed in connection therewith, the Court recommends that the Motion be DENIED based on the following reasoning.

**I. BACKGROUND**

1. Plaintiff Elm 3DS Innovations, LLC ("Plaintiff" or "Elm") brought suit in November 2014. (D.I. 1) A subsequent First Amended Complaint ("FAC"), (D.I. 18), alleges that Defendants' semiconductor chip products infringe 12 United States patents, one of which—U.S. Patent No. 7,193,239 ("the '239 patent")—is particularly relevant here. Chief

Judge Leonard P. Stark has referred the instant case to the Court for limited purposes, including for resolution of the instant Motion. (D.I. 6)

2. With the Motion, Defendants seek to dismiss Plaintiff's claims for induced infringement, to the extent Plaintiff seeks damages for pre-suit infringement. (D.I. 26 at 2)[1] Plaintiff has confirmed that it alleges pre-suit induced infringement as to only one of the patents-in-suit, the '239 patent, (D.I. 28 at 1 & n.1), and so that claim is the only claim put at issue by the Motion.

## II. DISCUSSION

3. The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim for induced infringement, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Plaintiff does not contend that by filing an Answer to the original Complaint, Defendants waived the ability to move for dismissal pursuant to Rule 12(b)(6). (*See* D.I. 26 at 5 (citing *In re Morrison*, 421 B.R. 381, 386 (S.D. Tex. 2009)); D.I. 28 at 5-7) Thus, the Court will consider the Motion as one filed pursuant to Rule 12(b)(6).

alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

4. As to the substance of an induced infringement claim, 35 U.S.C. § 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to prove induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks and citations omitted); *see also Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) ("Thus, 'inducement requires evidence of culpable conduct, *directed to encouraging* another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'") (emphasis added) (citation omitted). A complaint stating a claim for induced infringement must allege facts that, taken as true, plausibly demonstrate the requisite knowledge and intent—that is, that Defendants knew of the patent, knew that a third party's (here their customers') acts constituted infringement of the patent, and specifically intended that their customers infringe. *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 356 (D. Del. 2010).

5. Defendants first assert that Plaintiff has not alleged sufficient facts demonstrating that Defendants had pre-suit knowledge of the '239 patent. (D.I. 26 at 7-11; D.I. 31 at 2-5) To

3

that end, although the FAC generally alleges Defendants' pre-suit knowledge of the patent, (D.I. 18 at ¶ 54), it does not cite to any direct evidence indicating that Defendants ever reviewed or cited to the '239 patent prior to suit. (*See* D.I. 18 at ¶¶ 54-81; D.I. 28 at 8 (noting that Plaintiff intends to demonstrate such knowledge "indirectly from surrounding circumstances"))

6. The FAC does, however, list certain facts relating to Defendants' knowledge of and citation to other of Plaintiff's patents that are related to the '239 patent. These include the following allegations: (a) in 2000 or 2001, Elm's President Glenn Leedy, the inventor of the patents-in-suit, made a presentation to Defendants on Elm's 3DS technology and sent Defendants a copy of U.S. Patent No. 5,915,167 ("the '167 patent"), the parent patent to the '239 patent; (b) the presentation included several slides depicting figures from the '167 patent; and (c) thereafter, Defendants cited to four Elm 3DS patents (the '167 patent, and three children of the '167 patent that share the same specification as the '239 patent) in prosecuting a number of Defendants' own patents.[2] (D.I. 18 at ¶¶ 55-57)

7. The FAC also contains allegations that the '239 patent was well known in the semiconductor industry and was frequently cited by other of Defendants' competitors in that industry. These include the following allegations: (a) the '239 patent has been cited by at least 40 issued U.S. patents since 2008, including by a number of other companies in the semiconductor field such as Micron Technology, Inc. (hereinafter "Micron," a Defendant in a

---

[2] The Court agrees with Defendants that Plaintiff's additional allegation that "[u]pon information and belief, since 2000, Samsung followed Mr. Leedy's Elm 3DS portfolio as it obtained the patents-in-suit" is a bare conclusion, devoid of any factual support. (D.I. 31 at 2-3) The Court does not consider it here, and will focus on the remaining factual allegations Plaintiffs put forward in order to demonstrate that Defendants had pre-suit knowledge of the '239 patent.

4

related case filed by Plaintiff in this Court), Xilinx, Inc. ("Xilinx") and IBM Corporation ("IBM"); (b) Defendants, along with Micron, Xilinx, IBM and SK Hynix, Inc. (another Defendant in a related case filed by Plaintiff in this Court), are participants in the HMC Consortium, a forum for semiconductor manufacturers that "have come together for the explicit purpose of developing and adopting an industry-wide interface for DRAM memory architectures that revolves around vertical stacks of DRAM die"; (c) Micron has cited to the Elm 3DS patent portfolio in over 40 of its patents since 2000; (d) Micron cited to the '239 patent on Information Disclosure Statements ("IDS") submitted during prosecution of patent applications that eventually issued as U.S. patents, including on a 2013 IDS devoted entirely to disclosing patents and patent applications belonging to Mr. Leedy; and (e) the Elm 3DS portfolio, and in particular the '239 patent, "were frequently referenced" in the "tight knit" semiconductor industry, and were "widely and publicly known" in that industry. (*Id.* at ¶¶ 58-62)

8. The allegations regarding Defendants' interaction with patents related to the '239 patent, taken as true, suggest that as of the early 2000s, Defendants had some fairly detailed, specific discussions about the '239 patent's parent—and went on to cite to other patents from the same patent family thereafter. Of course, even in light of this, it is certainly possible that while Defendants were very aware of the '239 patent's parent, and were aware of certain of its siblings, they still lacked knowledge of the '239 patent itself, since they had no affirmative duty to keep abreast of the '167 patent. But these facts at least help to make it seem *more plausible* that Defendants did in fact have actual knowledge of the '239 patent. So too do Plaintiff's allegations that the '239 patent is well known and frequently referenced in the semiconductor industry, and that it has been frequently cited by Defendants' competitors (both in issued patents and patent

5

applications) over the last many years. These pleaded facts are relevant not because the Court is imputing the knowledge of Defendants' competitors to Defendants, (*see* D.I. 26 at 9), but because if true (as the Court must assume them to be), they render it more likely that Defendants (who are also participants in the allegedly "tight knit" semiconductor industry) may have been similarly aware of the '239 patent's existence and its contents. *See Investpic, LLC v. Factset Research Sys., Inc.*, Civ. No. 10-1028-SLR, 2011 WL 4591078, at *2 (D. Del. Sept. 30, 2011) (finding that plaintiff had sufficiently alleged that defendant had knowledge of the patent-in-suit, in part because plaintiff had alleged that the patent was "well-known in the industry—having been cited by at least 79 issued U.S. patents since 2001[,]" and "if a patent is 'publicly' known, one can infer . . . that an individual defendant had knowledge of it").[3]

9. In and of themselves, the allegations regarding (1) Defendants' knowledge of patents related to the '239 patent or (2) the '239 patent's ubiquity in Defendants' industry, may not have been sufficient here.[4] And even taken together, they may not make pre-suit knowledge

---

[3] *Cf. MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233-34 (D. Del. 2012) (distinguishing *Investpic* on this point on the grounds that while there, the patent-in-suit had been cited by at least 79 issued patents in the past 10 years, in the instant case, there were "no similar allegations supporting an inference that the [patent-in-suit] is widely known and frequently referenced in the industry" and that, in the instant case, "the alleged public disclosure stems from two lawsuits against Defendants' competitors, which concluded well before the issuance of the [patent-in-suit]"); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3946581, at *4 & n.5 (N.D. Ill. Sept. 2, 2011) (*cited in MONEC*, 897 F. Supp. 2d at 232) (concluding "that the litigants are competitors in the same industry is a fact that makes [a defendant's knowledge of the competitor's] patent at issue *more* plausible," even if such allegations would not be sufficient, in and of themselves, to pass Rule 12(b)(6) muster) (emphasis in original).

[4] *Cf. MONEC*, 897 F. Supp. 2d at 233 (finding that the fact that the alleged infringer had knowledge of a related patent to the patent-in-suit was not, *without more*, sufficient to demonstrate a plausible claim to pre-suit knowledge of the patent-in-suit); *Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012) (finding that

*probable*. But considered as a whole, they render it at least *plausible* that Defendants were aware of the '239 patent and its claims prior to suit. *See id.* (concluding that another fact demonstrating knowledge—specifically, that products relating to the invention were readily available in the U.S. marketplace—when combined with fact that the patent-in-suit was well known in the industry, was together enough to make a plausible claim of knowledge of the patent); *see also Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *5-6 (D. Del. July 26, 2012) (denying a motion to dismiss after concluding that plaintiff had alleged a "plausible basis" for pre-suit knowledge based on the combined allegations that: (1) defendant's subsidiary "had cited the published application of the parent application of the [patent-at-issue] during the prosecution of one of [the subsidiary's] own patents"; (2) defendant had a "connection with [the] inventor"; and (3) defendant learned about the patent "from Apple in the course of its relationship with Apple as the exclusive seller of the iPhone . . . based on Apple's previous discussions with [plaintiff] involving [the patent-at-issue]").

10. Next, Defendants assert that Plaintiff has failed to adequately plead that they had knowledge of their customers' infringement. (D.I. 26 at 11-13; D.I. 31 at 5-8) Yet in the FAC, Plaintiff alleges that Defendants' semiconductor chip products infringe at least claim 1 of the '239 patent, which is an apparatus claim. (D.I. 18 at ¶ 65) And Plaintiff sets out *how or why* these products infringe at least that claim: the claim, which is set out in full in the FAC, is asserted to cover "thinned, stacked semiconductor die that are bonded together in a single

---

media reports confirming that a company with similar business interests to defendant was sued for infringement of the patent-in-suit was not sufficient, "by itself[,]" to suggest that the defendant would have been aware of those reports).

7

package" and Defendants' semiconductor chips are alleged to contain the claimed structure (i.e., to comprise "thinned, stacked semiconductor die that were bonded together in a single package"). (*Id.* at ¶¶ 66, 68; *see also id.* at ¶¶ 69-71; D.I. 28 at 14) This articulation of how and why Defendants' chips infringe is not lengthy, but Defendants do not articulate why it is insufficiently specific to set out a plausible claim of infringement.

11. From there, if it is plausible that Defendants knew of the '239 patent, then it is plausible that, as Plaintiff alleges, Defendants had reviewed the content of the patent's specification and claims. (*Id.* at ¶ 64) Next, Plaintiff pleaded that Defendants are "global manufacturers of semiconductor devices" with "deep expertise" in manufacturing such products, such that they "possessed the technical expertise required" to understand the content and scope of that patent—including that the patent covered semiconductor chips of the kind that Defendants made. (*Id.* at ¶¶ 66-68) Plaintiff then plausibly alleges that Defendants knew that its semiconductor chips at issue were in fact incorporated into its customers' finished electronics products sold in the United States. (*Id.* at ¶¶ 73-75)[5] And because the allegation here is that Defendants' customers directly infringed the '239 patent "when they imported or sold finished

---

[5] The allegations are also that Defendants' semiconductor chip products cannot be sold or used in a manner that does not infringe, in that they (1) are integral components of their customers' computer and mobile products that incorporate them; (2) are built into those customers' products; and (3) cannot be removed or disabled by a purchaser of those end products. (D.I. 18 at ¶ 76); *see Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 778 (D. Del. 2013) (approving the sufficiency of allegations of infringement of apparatus claims, wherein the allegations were that "[Defendant] is aware that the infringing soft start circuit is a default feature of the controller products incorporating this circuit, that the softstart circuit is always present and cannot be disabled by a purchaser of the controller and, therefore, that [Defendant's] customers will infringe [the patent-in-suit] by using the default softstart feature or by incorporating the infringing controller in other products, and that subsequent sales of such products would also be a direct infringement.") (emphasis and citation omitted).

8

electronics products containing infringing Samsung semiconductor chips in the United States[,]" the FAC plausibly asserts that Defendants were aware of their customers' infringement via that importation and sale. (*Id.* at ¶¶ 63, 72); *cf. Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*, Case No. 13-cv-02502-WHO, 2013 WL 5934698, at *4 & n.3 (N.D. Cal. Nov. 4, 2013).

12. Lastly, Defendants assert that Plaintiff has not adequately alleged that they specifically intended to induce infringement. (D.I. 26 at 13-15; D.I. 31 at 8-9) However, the FAC alleges that Defendants encouraged their customers (including through the dissemination of advertising brochures and other materials) to incorporate Defendants' allegedly infringing semiconductor chips (i.e., those "comprising thinned, stacked semiconductor die that were bonded together in a single package") into the customers' finished products (that in turn, were to be sold in the United States). (D.I. 18 at ¶¶ 77-81, 93) These allegations plausibly describe encouragement of sale of the allegedly infringing apparatus—all after having sufficiently described what it is about Defendants' semiconductor chips that is said to render them infringing apparatuses in the first place, and why Defendants had knowledge that those chips infringed. This is sufficient to plead specific intent.

### III. CONCLUSION

13. For the reasons set forth above, the Court recommends that the Motion be DENIED.[6]

14. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written

---

[6] Defendants' request for oral argument on the Motion, (D.I. 32), is DENIED.

objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

15. The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: September 29, 2015

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE