

February 13, 2020

**VIA E-FILING**
The Honorable Jennifer L. Hall
J. Caleb Boggs Federal Building
844 N. King Street
Unit 17, Room 3124
Wilmington, DE 19801-3555

**FILED UNDER SEAL**

> RE:  *Elm 3DS Innovations, LLC v. Samsung Electronics Co., Ltd., et al.,*
> <u>(C.A. No. 14-cv-1430-LPS)</u>

Dear Judge Hall:

Elm respectfully requests that the Court compel Samsung to produce sales data about the accused products that Samsung has promised, but failed, to produce. Elm is entitled to this data under the Supreme Court's decision in *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018), and this Court's decision in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 04-1371-LPS, 2018 WL 4804685 (D. Del. Oct. 4, 2018). This Court also recently granted Elm's motion to compel similar data from Micron in a related case. *See* C.A. No. 14-cv-1431-LPS, D.I. 201 (Elm letter) & 204 (Stark, C.J., Order). The result here should be the same.

This case is about semiconductor technology. The asserted claims cover three-dimensional integrated circuit devices that are used in a wide variety of products, including smartphones and tablets. In June 2019, Elm served interrogatories seeking monthly revenue and profit for the accused products from 2008 to 2018, both worldwide and for products that were manufactured, sold, offered for sale, or imported into the United States. Ex. A, Elm 3rd Common Interrogatories.[1] After learning that Samsung had manufactured in the United States silicon die that it subsequently used to create infringing products abroad, Elm asked Samsung to provide sales data for any infringing devices made with those die. Ex. C, Elm 4th Interrogatories.

Elm's interrogatories generated significant opposition from Samsung. Following extensive discussion, the parties reached agreement on many of the disputed sales-related issues. Elm memorialized this agreement in a detailed email. *See* Ex. D, Dec. 15, 2019 Email. Elm's email asked Samsung to "let me know right away if you believe I've missed or misstated anything." *Id.* Samsung did not raise any concerns in response to this email. Three days later, the parties had a telephonic meet and confer and Samsung gave no indication that it intended to abandon the parties' agreement. To the contrary, Samsung emailed Elm a couple days later confirming that it could provide some of the data that had been left open in Elm's December 15 email. *See* Ex. E, Dec. 20, 2019 Email.

Samsung's productions have failed to live up to Samsung's agreements and do not include the following significant categories of information covered by Elm's interrogatories:

---

[1] Elm also served an interrogatory seeking sales data in 2018. *See* Ex. B, Elm First Common Interrogatories. Samsung never provided fulsome responses to Elm's 2018 request.

919 N. MARKET STREET, 12TH FLOOR, WILMINGTON, DE 19801
PHONE: (302) 777–0300 · FAX: (302) 777–0301 · WWW.FARNANLAW.COM

*Worldwide Sales*: The parties agreed that, instead of producing all worldwide sales of relevant products, Samsung would "produce worldwide sales data for all relevant products . . . regarding which Samsung has conducted sales-related activities in the U.S." on January 24. *See* Ex. D, Item 2. But Samsung's January 24 production was limited to a single spreadsheet identifying its non-U.S. sales to companies based in the U.S. *See* SAMSUNG-ELM-000062367.[2] Elm's December 15 email memorialized the parties' agreement that Samsung's January 24 production would include: (1) All worldwide sales data for relevant products that "Samsung knows or has reason to believe . . . will be imported into the United States;" (2) "[A]ll worldwide sales of relevant products to any customer who has ever received, in the United States, an email, call, or other communication from any Samsung entity," and (3) "all worldwide sales of relevant products to any customer who has ever met with any representative of any Samsung entity in the United States, and all worldwide sales of relevant products to any affiliates of such customers." Ex. D. Samsung's January 24 production came nowhere close to providing the agreed-upon data.

*Downstream Products*: Samsung also has not produced data that it promised to produce regarding worldwide sales of downstream products (e.g. consumer electronic products) that use an accused image sensor incorporating a die that Samsung manufactured in the U.S. *See id.* at Item 3. Elm requested those sales in Interrogatory No. 5. *See* Ex. C. It is now more than a month after the agreed-upon deadline for the production of that data, but Elm has yet to receive it.

This omission is likely significant. Samsung has disclosed less than ▬▬▬ in sales of accused stacked memory products in the United States, *see* SAMSUNG-ELM-000062357, and more than ▬▬▬ that amount in U.S. sales of downstream products that include an accused stacked memory component, *see* SAMSUNG-ELM-000062360. Samsung has disclosed more than ▬▬▬ in sales of stacked image sensor products. *See* SAMSUNG-ELM-00062365-66. So this omission may well involve ▬▬▬ in infringing sales.

*Identification of Accused Products Included in Samsung's Downstream Products*: Samsung has identified more than ▬▬▬ in U.S. sales of downstream products that include an accused product. *See* SAMSUNG-ELM-000062360; SAMSUNG-ELM-000062362. But Samsung has not identified which of the accused products are included in those downstream products. This information is critical to, among other things, identifying the top-selling accused products that the parties may choose to focus on for purposes of a representative products agreement. Samsung clearly knows this information; if it did not, it could not have identified the downstream product sales. And this information is covered by Elm's Common Interrogatory No. 4, which sought revenue data for Samsung's "Products" on a "product-by-product" basis. Ex. A.

*U.S. Sales of Downstream Products that Include Infringing Components Made by Third Parties*: Elm's Common Interrogatory No. 5 sought Samsung's sales of accused products "manufactured, sold, offered for sale, or imported into the United States." Ex. A. This request plainly covers all of Samsung's sales of infringing products; it is not limited to components that Samsung makes. However, as late as December 15, Samsung had not investigated what products it sells in the U.S. that include an infringing component made by a third party. And, to date, Samsung has not produced any such data.

---

[2] The produced spreadsheets are in native Excel format and not easily printed to PDF. Elm would be happy to lodge native versions of these documents upon the Court's request.

***Worldwide Sales of Accused Memory Products (and Downstream Products that Include such Products) That Include Die Manufactured in the United States***: Samsung originally stated that it did not know "where the individual wafers processed and sold" by Samsung in the U.S. "travel downstream." Ex. F, Samsung Resp. to Interrog. No. 5. Samsung subsequently agreed to investigate its ability to estimate its "worldwide sales of relevant memory products that incorporate die made from wafers that Samsung made in or supplied from the U.S." Ex. D, Item 4. Samsung agreed to provide any available estimate by January 31. *Id.* Samsung subsequently confirmed that it planned to provide that estimate. *See* Ex. E. Samsung still has not provided that estimate to Elm.

***Intra-Company Transfer Prices*:** Samsung sometimes realizes revenue from its sales of accused products when it sells the products to a third party. Samsung also often realizes revenue from its "sale" of the product to a related Samsung entity responsible for incorporating the accused component into a downstream product. Elm's sales interrogatories were not limited to the former type of revenue. *See* Ex. B, Common Interrog. No. 2; Ex. A, Common Interrog. No. 4. Samsung agreed to investigate whether it could provide what it has called "internal pricing." *See, e.g.*, Ex. E. Samsung subsequently indicated that it could provide that data by February 3. *See* Ex. G, Jan. 29, 2020 Email. To date, Elm has not received that data.

***Incomplete Data***: Samsung's data is also incomplete in the following respects:

- SAMSUNG-ELM-000063260 identifies Samsung's U.S. sales of downstream products that include an accused memory product. Many entries in that spreadsheet show significant net quantities, but no sales. Despite Elm's requests, Samsung has not explained this discrepancy.

- SAMSUNG-ELM-00006326 identifies Samsung's U.S. sales of downstream products that include an accused image sensor product. The product codes listed in this spreadsheet are shorter than Samsung's other product codes and appear, therefore, to be incomplete. Samsung has not responded to Elm's request for an explanation of this discrepancy.

- Missing data: Samsung has stated that SEA—its US affiliate responsible for many of the accused product sales—███████████████████████████████. *See* Ex. H, Jan. 21 Email. ███████████████████████████████████████████████████

***Samsung's Last-Minute Productions***: Hours before this brief was due, Samsung produced a number of files and sent an email stating that its "productions moot any need for Elm's motion." Ex. I. Elm has not yet had the opportunity to review Samsung's productions. To the extent that Samsung's recent productions narrow the issues presented in this brief, Elm will update the Court in advance of the February 21 teleconference.

Elm respectfully requests that the Court compel Samsung to produce the sales data Elm requested and Samsung agreed to provide. Elm has attached a Proposed Order for the Court's consideration that identifies the specific categories of data outlined above.

                                                          Respectfully submitted,

                                                          /s/ Brian E. Farnan

                                                          Brian E. Farnan

cc:      Counsel of Record (via E-Mail)