IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELM 3DS INNOVATIONS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity,<br>SAMSUNG SEMICONDUCTOR, INC., a California corporation,<br>SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and<br>SAMSUNG AUSTIN SEMICONDUCTOR, LLC, a Delaware limited liability company,<br><br>Defendants. | C.A. No. 14-1430-LPS<br><br>REDACTED - PUBLIC VERSION |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM
ADAM W. POFF REGARDING DEFENDANTS' RESPONSE TO
PLAINTIFF'S FEBRUARY 13, 2020 DISCOVERY LETTER (D.I. 254)**

OF COUNSEL:

Allan M. Soobert
Naveen Modi
Phillip W. Citroën
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700
(202) 551-1705 (fax)
allansoobert@paulhastings.com
naveenmodi@paulhastings.com
phillipcitroen@paulhastings.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*pkraman@ycst.com*

*Attorneys for Defendants Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Samsung Electronics America, Inc., and Samsung Austin Semiconductor, LLC*

Dated:  February 18, 2020

Redacted Version: February 25, 2020

26050332.1

Dear Magistrate Judge Hall:

       The Samsung Defendants ("Samsung") respectfully respond to the February 13, 2020 letter from Plaintiff Elm. Elm's letter mischaracterizes the discovery conducted to date, is largely moot and was unnecessary from the outset. Samsung produced virtually all the requested discovery. The only unresolved issue remaining is on foreign sales data that, in effect, double counts worldwide component sales already produced. The following issues are moot:

- ***Worldwide Component Sales***: Samsung produced the requested data.[1] *See* Ex. 1.

- ***Identification of Accused Components Made by Samsung Included in Samsung's Downstream Products***: Samsung produced the requested data.[2] *See* Ex. 1.

- ***U.S. Sales of Downstream Products that Include Third-Party Components***: Samsung produced the requested data, to the extent it exists at Samsung.[3] *See* Ex. 1.

---

[1] The parties first agreed that Samsung would produce a limited set of worldwide sales—those with a tie to U.S. sales activities—as a compromise to all worldwide sales. But this compromise proved unworkable due to unreasonableness by Elm. Elm continued to demand "all worldwide sales of relevant products to any customer who has ever received, in the United States, an email, call, or other communication from any Samsung entity." D.I. 254 at 2. It is impracticable, if not impossible, for a company of Samsung's size to identify *every* email, call, or communication with any customer from 2007 to the present, and tie those activities to relevant products (which also required narrowing for thickness and die-stacking requirements). Because Elm refused to work in good faith on this compromise, Samsung reverted to producing *all* worldwide sales for the accused products, and asked for reasonable time for production. Ex. G. Yet, ***the next day***, Elm inexplicably proceeded with its motion to compel this data, despite there ***clearly being no dispute***. Ex. 3. This highlights an unfortunate pattern of abuse of the Court's discovery process, wherein Elm demands immediate productions of voluminous and burdensome discovery by repeatedly threatening motion practice, regardless of whether the parties disagree over the issues.

[2] This request was also never in dispute. First, Samsung's productions identified downstream products in their entirety, on a "product-by-product" basis, as sought by Elm's interrogatory, and were thus fully responsive. *See* Ex. 4 and 5. Elm's subsequent request for more data correlating ***over a thousand*** downstream products to the memory/image sensor components incorporated therein was entirely new on December 15, and required time to prepare into a producible format. *See* Ex. 6. Nevertheless, Samsung *agreed* to prepare this new data for production and diligently produced it. *Id.*, Ex. 1. Again, Elm rushed to the Court to complain about this issue when ***there was no dispute*** (and despite Elm not even seeking this data through a pending interrogatory).

[3] This request was also never really in dispute. Elm does not deny that Samsung produced responsive data for downstream products with memory and image sensor components made by Samsung, and Samsung disagrees that Elm's interrogatory "plainly covers" products with third-party components as well. There is no clear reference or suggestion to such third-party products in Elm's interrogatories. *See* Ex. A and B. Nevertheless, after Elm first raised the issue on around December 15, Samsung diligently provided this data thereafter. *See* Ex. D and Ex. 1.

- ***Intra-Company Transfer Prices***: Samsung produced the requested data. *See* Ex. 1.[4]

- ***Worldwide Sales of Accused Memory Products That Include Die Made in the U.S.***: Samsung does not track sales of memory products with wafer products by Samsung Austin Semiconductor LLC (SAS),[5] and thus produced the next best data from which the requested sales can be approximated—average sales prices of accused memory products, and production volumes of accused memory products with SAS products. Ex. 7.

- ***Purportedly "Incomplete Data"***: Samsung produced fully responsive data to the extent it exists. Elm improperly characterizes its confusion over this data as deficiencies in Samsung's responses, and should instead seek a ***deposition*** of a knowledgeable witness:

  - **SAMSUNG-ELM-000062360** (Ex. 4): Elm's inability to comprehend why certain entries show "net quantities" but no "sales" does not turn them into discrepancies or make this spreadsheet incomplete. Nor does Elm's interrogatory seek explanations of specific data entries or individual product sales.

  - **SAMSUNG-ELM-000062362** (Ex. 5): Elm's inability to understand differing numbering schemes for downstream products of one business unit as compared to component products of another unit does not indicate any discrepancies or support its speculation that this spreadsheet incomplete. Nor does Elm's interrogatory seek explanations of product naming conventions or differences in product codes.

  - ***Pre-2010 data***: Elm correctly notes that SEA has not produced sales data from before 2010. This does not, however, mean that Samsung "destroyed its pre-2010 data" as Elm suggests. Samsung has since retrieved pre-2010 sales data but found no data responsive to Elm's request. *See* Ex. 11. If Samsung becomes aware of any responsive data not yet produced, it will timely update Elm accordingly.

Elm's assertion that its interrogatories "generated significant opposition from Samsung" is unfounded. D.I. 254 at 1. As shown by its productions, Samsung complied with ambitious deadlines and tried to address these issues without burdening the Court, through great diligence and efforts over the holidays.[6] Elm's demands for immediate production of additional data,

---

[4] This request was also never in dispute. Elm notes that its interrogatories "were not limited," but they do not suggest the inclusion of transfer prices anywhere. Samsung has been producing financial data for the accused products for months, yet Elm only asked for the transfer prices for these products on December 15, Ex. D, and Samsung diligently produced this data, Ex. G, 1.

[5] Samsung does not manufacture ***dies*** for accused products in the U.S. SAS is Samsung's U.S. subsidiary that makes ***wafers***, which are shipped to Korea for dicing and packaging into dies.

[6] *See* Ex. 2 (Samsung's agreement); Ex. 8 (showing by agreed date of January 10 productions of: SEA's sales of downstream products containing accused memory and image sensor components; SELA-Miami's sales of downstream products containing accused memory and image sensor components; SEC's worldwide sales of image sensor components containing SAS products.)

2

under repeated threats of this motion, are unreasonable under the circumstances.  It is also inappropriate for Elm to needlessly bring these issues to the Court, when Samsung *agreed* to produce the requested discovery and largely did so by its target February 14 date.  Ex. G.  And, Elm cannot credibly allege that the *nine issues* listed in its letter required the Court's assistance to resolve.  *See Techno View IP, Inc. v. Facebook Technologies, LLC et al*., No. 1-17-cv-00386 (D. Del. Nov. 21, 2017) (where the parties also raised 9 discovery disputes, the Court "has never seen a matter in which parties had this many unresolved [disputes]," giving it "concern as to whether the parties have fully satisfied their responsibility . . . to make a good faith effort to resolve such disputes before bringing them to the Court.").  Elm's tactics are not consistent with its obligation to make good faith efforts to resolve discovery matters.  D.I. 111 at 10.

***Foreign Sales For Downstream Products***:  With regard to the *sole* issue that remains unresolved, Elm's complaints are without merit.  Contrary to Elm's incorrect assertion, Samsung never agreed to produce foreign sales for *downstream products* (*e.g.*, phones).  *See* Ex. 2 (Samsung's discovery agreement).  The accused *component* products are memory/image sensor components (chips), which can be incorporated in downstream products.  Samsung agreed to produce worldwide sales for those components and has already done so.  *See id*.  Samsung also produced U.S. sales for downstream products incorporating such components.  Samsung is not aware of any legitimate basis, under *WesternGeco* or otherwise, for Elm to double count units by obtaining both worldwide component sales and foreign sales of the downstream products having such components.  Elm has not explained how this data could lead to admissible evidence.

To the extent Elm points to SAS's wafer products made in the U.S., Samsung produced all worldwide sales for accused components containing SAS wafer products.  Ex. 1 and 7.  Elm has no basis to seek worldwide sales for downstream products that incorporate the *same accused components* containing SAS wafer products.  Such a request is prohibited by patent exhaustion.  *See Impression Prods. v. Lexmark Int'l, Inc*., 137 S. Ct. 1523, 1527 (2017) (finding exhaustion from foreign sales); *Quanta Computer, Inc. v. LG Elecs., Inc*., 128 S. Ct. 2109, 2122 (2008).

While Samsung produced *U.S. sales* for both (1) accused memory components (where there were no U.S. sales of accused image sensor components), and (2) downstream products incorporating accused memory and image sensor components, these sales are distinguishable from the foreign sales issue above.  Samsung's accused memory components are sold in the U.S. (by defendant SSI) only to original-equipment-manufacture customers for inclusion in *their* third-party downstream products.  Ex. 9 at 10; Ex. 10 at 13.  Samsung's *own* downstream products sold in the U.S. thus incorporate *unique* memory components.  Samsung agreed to produce U.S. sales data for both memory components, and downstream products incorporating those components, as that did not risk double recovery of the same accused components.

In contrast, where Samsung produced *all worldwide sales* for accused memory and image sensor components containing SAS products, to external and internal customers (with transfer prices also provided), there is no valid use for further sales of downstream products including the *same* accused components containing SAS products.  This request unjustifiable on its face.

Thus, Samsung respectfully requests that the Court deny Elm's request for foreign sales of downstream products, for which worldwide sales for the underlying accused components has been produced, and deny all other requests for relief raised by Elm as moot.

Respectfully submitted,

/s/ *Adam W. Poff*

Adam W. Poff (No. 3990)

4

## **CERTIFICATE OF SERVICE**

I, Adam W. Poff, hereby certify that on February 25, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Joseph J. Farnan, Jr. Esquire
Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
Farnan, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*farnan@farnanlaw.com*
*bfarnan@farnanlaw.com*
*mfarnan@farnanlaw.com*

*Attorneys for Plaintiff*

I further certify that on February 25, 2020, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record, and on the following:

Adam K. Mortara, Esquire
Matthew R. Ford, Esquire
Bartlit Beck LLP
54 West Hubbard Street, Suite 300
Chicago, IL  60654
*adam.mortara@bartlit-beck.com*
*matthew.ford@bartlit-beck.com*

16577858.1

       John M. Hughes, Esquire
       Katherine L.I. Hacker, Esquire
       Nosson D. Knobloch, Esquire
       Daniel C. Taylor, Esquire
       Bartlit Beck LLP
       1801 Wewatta, Suite 1200
       Denver, CO  80202
       john.hughes@bartlit-beck.com
       kat.hacker@bartlit-beck.com
       nosson.knobloch@bartlit-beck.com
       dan.taylor@bartlit-beck.com

*Attorneys for Plaintiff*

       YOUNG CONAWAY STARGATT
        & TAYLOR, LLP

       */s/ Adam W. Poff*
       Adam W. Poff (No. 3990)
       Pilar G. Kraman (No. 5199)
       Rodney Square
       1000 North King Street
       Wilmington, Delaware  19801
       (302) 571-6600
       *apoff@ycst.com*
       *pkraman@ycst.com*

*Attorneys for Defendants*