IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELM 3DS INNOVATIONS, LLC, a Delaware limited liability company,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity,
SAMSUNG SEMICONDUCTOR, INC., a California corporation,
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and
SAMSUNG AUSTIN SEMICONDUCTOR, LLC, a Delaware limited liability company,

Defendants.

C.A. No. 14-1430-LPS

**REDACTED - PUBLIC VERSION**

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM ADAM W. POFF REGARDING DEFENDANTS' DISCOVERY ISSUES <u>TO BE HEARD ON OCTOBER 30, 2020</u>**

OF COUNSEL:

Allan M. Soobert
Naveen Modi
Phillip W. Citroën
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700
(202) 551-1705 (fax)
*allansoobert@paulhastings.com*
*naveenmodi@paulhastings.com*
*phillipcitroen@paulhastings.com*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*pkraman@ycst.com*

*Attorneys for Defendants Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Samsung Electronics America, Inc., and Samsung Austin Semiconductor, LLC*

Dated: October 16, 2020
Redacted Version: October 23, 2020

Dear Judge Hall:

Samsung seeks an order compelling litigation funding-related discovery from Elm. Ex. 1-3 (relevant discovery requests). Elm [redacted] has withheld related documents on relevance and privilege objections. Ex. 1-2, 5. These documents, however, bear on everything from damages to infringement. Elm's objections should be overruled.

## A. <u>The Requested Discovery Is Relevant to Numerous Issues in This Case</u>

The requested litigation funding discovery is relevant to at least five issues. ***First***, it is relevant to damages, including establishing the value of asserted patents, as courts in this and other jurisdictions have found. *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (ordering party to produce documents on litigation finance negotiations as relevant to "valuation, damages, royalty rates, [and] pre-suit investigative diligence"); *Impact Engine, Inc. v. Google LLC*, No. 19-1301-CAB-DEB, D.I. 89 at 4 (S.D. Cal. Aug. 12, 2020) (Ex. 4) (finding funding documents relevant to "establish the value of the patents at issue"); *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016) (funding documents "directly relevant" to "valuations placed on the . . . patents prior to the present litigation"); *SanDisk Corp. v. Round Rock Research LLC*, 2014 WL 691565, at *4 (N.D. Cal. Feb. 21, 2014) (ordering party to produce documents sent to potential investors as relevant to damages). In fact, as Samsung identified for Elm during the parties' correspondence, several *Georgia Pacific* factors are implicated by this discovery, including factor 11 that considers evidence probative of the value of the use of the invention. *See* Ex. 5 (also identifying factors 4, 10, 15); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *2 (N.D. Cal. July 8, 2015) (finding evidence of "Plaintiff's business . . . relevant to a damages analysis under the Georgia-Pacific factors").

***Second***, these documents are relevant to the claims, defenses and other key issues in the case— namely infringement, validity, and enforceability, among others—considered during the funder's diligence. *Acceleration Bay*, 2018 WL 798731, at *3. Such documents will implicate valuation, as well as infringement and validity issues. Elm's contention that it already produced "more than enough" information on valuation (*i.e.*, in documents on its licensing efforts), misses the point. Ex. 5. A party cannot unilaterally decide what is "enough" discovery, and even if it could, valuation is only one consideration in investing in a lawsuit. These documents may also reveal Elm admissions and statements about the patents. *See Impact Engine*, No. 19-1301-CAB-DEB, D.I. 89 at 4 (funding documents are relevant to "obtain statements made by [Plaintiff]").

***Third***, Elm's standing is implicated because LLCs require members, and its only apparent member is now deceased. These documents show whether Elm continues as a purported operating LLC engaged in fundraising activities. *Acceleration Bay*, 2018 WL 798731 at *3 (funding documents are "relevant to central issues" such as whether Plaintiff "is an operating company"). Moreover, whether Elm is an operating LLC, and not an under-funded shell or another entity's alter ego, relates to its ability to pay a judgment or fees. *See Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 851-56, 861 (E.D. Tex. Jan. 25, 2017) (finding undercapitalization of a shell entity supported fees against a previously undisclosed party-in-interest who controlled the litigation and identity of party-in-interest relevant to standing); *FastShip, LLC v. United States*, 143 Fed. Cl. 700, 717 (Fed. Cl. 2019) ("[C]ourts have focused on the disclosure of [litigation funding] agreements to encourage transparency and ensure a shadow broker is not using litigation as a form of

harassment or for multiple bites at the same apple."), *rev'd on other grounds*, 968 F.3d 1335 (Fed. Cir. 2020); *Cobra Int'l Inc. v. BCNY Int'l Inc.*, 2013 WL 11311345, at *2 (S.D. Fla. Nov. 4, 2013) (funding agreement relevant where the requestor "want[ed] to know whether ownership of the patent has transferred, and who has control over the decisions in the instant case").

***Fourth***, these documents are relevant to trial themes, such as the David-v.-Goliath narrative in Elm's Complaint. For example, the Complaint describes Samsung as a "global leader in the electronics market" that sells "billions of dollars of computer memory and consumer electronics each year." Ex. 6, ¶ 6. In contrast, the Complaint notes that the single inventor, Mr. Leedy, left companies to gain "independent creative control and ownership of his inventions," which were "foundational inventions found in modern semiconductors the world over." *Id.* ¶¶ 5, 20, 22. *See Impact Engine*, No. 19-1301-CAB-DEB, D.I. 89 at 3 (funding agreements were relevant to "refute any David vs. Goliath narrative at trial") (cites omitted). Elm has made its relative resources to Samsung's a theme in this case. Samsung should be permitted to investigate the bases for that comparison and rely on evidence of Elm's financing to rebut that theme.

***Finally***, these documents are relevant to witness credibility and bias. *Yousefi v. Delta Elec. Motors, Inc.*, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) (funding agreement relevant to credibility and bias if a funder "has an expectation of payment if and only if plaintiff prevails"); *Nelson v. Millennium Labs., Inc.*, 2013 WL 11687684, at *4-5 (D. Ariz. May 17, 2013) (agreements on "attorneys' fees, costs, and/or disbursement," are relevant to "potential bias"); *DNT, LLC v. Sprint Spectrum, LP*, 2010 WL 582164, at *4 (E.D. Va. Feb. 12, 2010) (financial arrangements were "relevant to the issue of witness bias."). For example, Elm has disclosed Mr. Ron Epstein as a witness on key issues, and Samsung believes that Mr. Epstein has a financial interest in this case. Ex. 7. The jury should know whether Elm's witnesses, such as Mr. Epstein, are involved in, have connections to, or stand to benefit from, Elm's funding arrangements.

## B. <u>The Requested Discovery is Not Privileged or Protected Work Product</u>

No privilege or doctrine protects the requested documents and communications. ***First***, there is no attorney-client privilege, because communications on funding are not made "for the purpose of obtaining or providing legal assistance." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). The fact that the attorney-client privilege does not apply forecloses application of the common-interest privilege. *Id.* at 364. [redacted] .[1] [redacted] *See Acceleration Bay*, 2018 WL 798731 at *3; *Midwest Athletics and Sports Alliance LLC v. Ricoh USA, Inc.*, No. 19-514, D.I. 172 (E.D. Pa., Sept. 16, 2020) (Ex. 8) (no common interest where a funder "did not acquire an interest in the asserted patents"); *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376-77 (D. Del. 2010) (common interest privilege does not apply to documents exchanged with litigation

---

[1] [redacted]

funders); *Cohen v. Cohen*, 2015 WL 745712, at *4 (S.D.N.Y. Jan. 30, 2015) (a "[litigation funder's] role undermines [the common interest] privilege theory" because "there has been no suggestion that [the litigation funder] has any legal claim against Defendants whatsoever"'). At the very least, Elm cannot deny that there is no privilege over communications with any ***prospective*** funders that it reached out to. *See Santella v. Grizzly Indus., Inc.*, 286 F.R.D. 478, 483 (D. Or. Sept. 26, 2012) (finding no common interest with prospective investors).

***Second***, litigation funding documents are not work product because their primary purpose is not for use in litigation. *See U.S. v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990); *U.S. v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009) ("the focus of work product protection has been on materials prepared for use in litigation, whether the litigation was underway or merely anticipated."); *Acceleration Bay*, 2018 WL 798731 at *2 (no work product for documents "prepared with a 'primary' purpose of obtaining a loan" or "prepared for a nonparty to the litigation . . . even if the nonparty is a party to closely related litigation"). Instead, these documents reflect the financial strategy of investing in this lawsuit, not protected litigation strategy.

There is also a substantial need for these documents because Samsung "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3rd Cir. 2000); Fed. R. Civ. P. 26(b)(3). For example, Samsung served a subpoena to Burford Capital in parallel, having reason to believe that it was funding Elm in this action. Ex. 9. Burford Capital requested that Samsung turn to third-party discovery only after first seeking production from Elm. Ex. 10. [redacted][2] Ex. 11. Elm's and Burford Capital's orchestrated refusals leave Samsung no alternative means to obtain these documents. *Odyssey*, 2016 WL 7665898, at *7 (work product overcome when funding documents were unavailable otherwise); *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 838-39 (Bankr. S.D. Fla. 2016) (same).

***Finally***, Elm must make a showing that a privilege applies. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012); *Holmes*, 213 F.3d at 138. But Elm has not even attempted to meet its burden. For example, Elm does not deny that it did not log these documents, despite claiming that its privilege log was timely and complete. Ex. 5. Elm's privilege objections fail on that basis alone. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 914 F.Supp. 1172, 1178 (E.D.Pa. 1996) ("failure to assert a privilege properly may amount to a waiver of that privilege.").

* * *

For these reasons, Samsung respectfully requests that the Court order Elm to: (1) produce agreements, documents and communications with prospective and actual funders, (2) apply Samsung's proposed search term on litigation funding to Elm's custodians and produce the resulting ESI, and (3) supplement its response to Defendants' Common Interrogatory No. 4 identifying agreements and relationships with entities having a financial interest in this case.

---

[2] Samsung did not respond to Elm's offer [redacted]. Contrary to Elm's assumption, Samsung never abandoned this issue, and raises it now because Elm claims to have substantially completed its production and privilege log (as of August 28), but Samsung finds them lacking in various issues, including those raised herein.

Respectfully submitted,

/s/ *Adam W. Poff*

Adam W. Poff (No. 3990)

# CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on October 23, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Joseph J. Farnan, Jr. Esquire
Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
Farnan, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*farnan@farnanlaw.com*
*bfarnan@farnanlaw.com*
*mfarnan@farnanlaw.com*

*Attorneys for Plaintiff*

I further certify that on October 23, 2020, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record, and on the following:

Adam K. Mortara, Esquire
125 South Wacker Dr., Suite 300
Chicago, IL 60606
adam@mortaralaw.com

Matthew R. Ford, Esquire
Bartlit Beck LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
matthew.ford@bartlit-beck.com

John M. Hughes, Esquire
Katherine L.I. Hacker, Esquire
Nosson D. Knobloch, Esquire
Daniel C. Taylor, Esquire
Bartlit Beck LLP
1801 Wewatta, Suite 1200
Denver, CO 80202
john.hughes@bartlit-beck.com
kat.hacker@bartlit-beck.com
nosson.knobloch@bartlit-beck.com
dan.taylor@bartlit-beck.com

*Attorneys for Plaintiff*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Adam W. Poff*

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
*apoff@ycst.com*
*pkraman@ycst.com*

*Attorneys for Defendants*