IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELM 3DS INNOVATIONS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG SEMICONDUCTOR, INC.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>and SAMSUNG AUSTIN SEMICONDUCTOR,<br>LLC,<br><br>    Defendants. | C.A. No. 14-1430-LPS-JLH |

## MEMORANDUM ORDER

Pending before the Court is Defendants' request to compel the production of certain documents listed on Plaintiff's privilege log. (D.I. 433.) Defendants' request is GRANTED-IN-PART and DENIED-IN-PART.

I.  **BACKGROUND**

On February 5, 2020, the Court referred all discovery disputes in this patent infringement action to me. (D.I. 246.) Since that time, I have heard (and resolved) numerous discovery disputes. (*See, e.g.,* D.I. 249; D.I. 273; D.I. 320; D.I. 341; D.I. 365; D.I. 420; D.I. 433; D.I. 436.) The current dispute before the Court pertains to certain documents on Plaintiff's privilege log, which is 167 pages long and contains over 2,700 documents. (D.I. 433; *see also* D.I. 420; D.I. 423; D.I. 427; D.I. 429.) I heard oral argument on July 21, 2021 and provided some guidance on the issues in dispute. I instructed the parties to meet and confer to see if they could resolve the remaining issues without further Court intervention.

On September 17, 2021, the parties filed a joint status report regarding the issues still in dispute. (D.I. 433.) The parties have significantly narrowed the issues in dispute, but Defendants

still have concerns regarding certain documents on Plaintiff's privilege log. (*Id.*) I ordered that the remaining documents in question be produced to the Court for *in camera* review. (D.I. 434; D.I. 440.) Plaintiff submitted 186 documents to the Court. I have reviewed the documents and find that Plaintiff must produce some of them, as set forth below.

## II.     LEGAL STANDARDS

"In patent cases, regional circuit law governs disputes relating to the applicability of the attorney-client privilege and related privileges/doctrines, to the extent that those issues are not unique to patent law." *INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 12171721, at *4 n.4 (D. Del. June 25, 2013). Neither side has argued that Federal Circuit law applies, nor has anyone suggested that the outcome of the current dispute turns on whether Federal Circuit law or Third Circuit law applies. Both sides cited cases from the Third Circuit (as well as other jurisdictions). (*See, e.g.*, D.I. 423 at 3; D.I. 427 at 4; D.I. 433.) Accordingly, I will assume that Third Circuit law applies.

The attorney-client privilege applies to a communication if it is "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[1] *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (internal

---

[1] In long form: "Under U.S. privilege law, in order to prevail on a claim of attorney-client privilege, Defendants must show that each document meets the following the standard:
> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

quotations omitted); *Onyx Therapeutics, Inc. v. Cipla Ltd.*, No. 16-988-LPS, 2019 WL 668846, at *1 (D. Del. Feb. 15, 2019).  However, "[w]hen the communication between an attorney and non-legal personnel primarily relates to business concerns"—as opposed to legal advice—"the communication is not within the scope of attorney-client privilege." *Immersion Corp. v. HTC Corp.*, No. 12-259-RGA, 2014 WL 3948021, at *1 (D. Del. Aug. 7, 2014).  Whether a communication is made for a business purpose or a legal purpose can be difficult to determine, particularly in the patent context. *See Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 143 (D. Del. 1977) ("As with any claim of privilege made in connection with patent matters, the problem of classification into protected and non-protected communications is troublesome.").  Courts in this district have looked to a communication's "primary purpose" to determine whether the privilege applies. *Onyx*, 2019 WL 668846, at *1; *Hercules*, 434 F. Supp. at 147; *Immersion*, 2014 WL 3948021, at *1.

Federal Rule of Civil Procedure 26(c)(3)(A) protects work product from discovery.  It provides that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(c)(3)(A).  To determine whether a document was prepared in anticipation of litigation or trial, "the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because

---

*Reckitt Benckiser Pharms. Inc v. Dr. Reddy's Lab'ys SA*, No. 14-1451-RGA, 2016 WL 11694169, at *1 (D. Del. Nov. 4, 2016) (quoting *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977)).

of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993).

The party asserting the attorney-client privilege or claiming work product protection has the burden of demonstrating that they apply. *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 477-78 (D. Del. 2012) (attorney-client privilege), *aff'd*, No. 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014); *Immersion*, 2014 WL 3948021, at *1 (work product).

### III. DISCUSSION

Defendants have sorted their remaining objections to Plaintiff's privilege/work-product claims into four categories: (1) documents for which the privilege log description is alleged to be insufficient; (2) certain communications between Glenn Leedy, Ron Epstein, and/or other Epicenter employees; (3) certain communications between Glenn Leedy and Michael Ure; and (4) Plaintiff's redactions to a Contingent Fee Engagement Letter. (*See* D.I. 433 at 1-12, Ex. L.) Plaintiff has the burden of demonstrating that the documents are protected from discovery.

#### A. Entries lacking information

The first category contains 12 documents. Defendants say that these documents should be produced because Plaintiff has not provided (on the privilege log or otherwise) sufficient information to establish that they are privileged and/or protected by the work product doctrine. Plaintiff responds that it has provided all of the information it can and that, "[f]or some documents, while it cannot be definitively determined *which lawyer* created or sent the document, it is apparent from the face of the document that *a lawyer* was involved in the creation of the document." (D.I. 433 at 5.)

4

Having laid eyes on the documents in question, I do not agree that a lawyer must have been involved in their creation, or even that it is more likely than not. Plaintiff bears the burden to establish privilege and work product protection. There is insufficient information (either intrinsic to the document itself or extrinsic) about who created the documents, why they were created, and whether they were communicated to anyone (an attorney or a third party). I find that Plaintiff has not met its burden to establish that any of them were made in confidence for the purpose of seeking legal advice or were created in anticipation of litigation.[2]

For example, the document marked ElmPriv_0040 is listed on Plaintiff's privilege log as follows:

| PrivLog ID | From | To | CC | Date | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|
| ElmPriv_0040 | | | | 12/27/1999 | ACP WP | Draft agreement regarding potential licensing of 3DS technology |

I have reviewed the document in question, and it appears to be an unsigned license agreement. As far as I can tell, it is not marked up. With respect to Plaintiff's claim that the document is privileged, I find that there is little evidence intrinsic to the document that would suggest that the document itself constitutes a communication between privileged people. I do not know who prepared it and, given that Plaintiff is engaged in the business of licensing patents, it might well have been prepared by a non-attorney. There is also no intrinsic or extrinsic evidence to suggest that the document was created or edited by Elm or its counsel as opposed to the third party that Elm was seeking to provide a license to (and even if it was created by Elm, I don't know if it was kept internally in confidence or shared with the third party). With respect to Plaintiff's work product claim, there is insufficient evidence to establish that the document was created in anticipation of litigation.

---

[2] I acknowledge that Plaintiff may lack some of this information because Mr. Leedy, the non-attorney custodian of many of the documents, is now deceased. (*See* D.I. 433 at 5.)

5

As another example, ElmPriv_0315 is listed on Plaintiff's privilege log as follows:

| PrivLog ID | From | To | CC | Date | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|
| ElmPriv_0315 | | | | 10/20/2003 | ACP | Portion of draft claim chart relating claim pending patent application to different semiconductor manufacturers |

This document is a one-page claim chart. Its metadata indicates that Mr. Leedy (a non-attorney) was the custodian of the document. (D.I. 433 at 2.) Plaintiff does not know who prepared the document and, given the nature of Plaintiff's business and the fact that it was located in the custody of a non-attorney, it might well have been prepared by a non-attorney. Here, again, I find that there is insufficient evidence to find that the document constitutes a communication between privileged persons.[3]

Another example is ElmPriv_0323, which is listed on Plaintiff's log as follows:

| PrivLog ID | From | To | CC | Date | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|
| ElmPriv_0323 | | | | 12/10/2003 | WP | Evaluation of revenues, profits, and potential damages from various possible defendants in potential infringement suit; document prepared in anticipation of litigation |

There is no evidence regarding who prepared this document and why. Having reviewed the document, and in light of the nature of Plaintiff's business, I cannot (without any additional information) conclude that Plaintiff has met its burden to show that the document was prepared in anticipation of litigation (as opposed to for business reasons).

Documents marked ElmPriv_0464-0467, 0472 are logged as follows:

| PrivLog ID | From | To | CC | Date | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|
| ElmPriv_0464 | | | | 2/20/2008 | ACP WP | Revenue and damages analysis of potential infringers of Elm's patents prepared at the direction of counsel and in anticipation of litigation; sets forth reasonable royalty analysis for potential infringement litigation |
| ElmPriv_0465 | | | | 2/20/2008 | ACP WP | Revenue and damages analysis of potential infringers of Elm's patents prepared at the direction of counsel and in anticipation of litigation |

---

[3] According to Plaintiff, it is a "fair inference that a lawyer was involved" because "counsel for Elm is not aware of any circumstance in which Mr. Leedy drafted a claim chart without assistance or input from counsel." (D.I. 433 at 5.) I agree that one reasonable inference is that an attorney was involved in the preparation of the document. Given the nature of Elm's business, however, it's not necessarily the most reasonable inference. Without additional information about who prepared this document and why, Plaintiff has not met its burden to demonstrate that it is privileged.

6

| PrivLog ID | From | To | CC | Date | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|
| ElmPriv_0466 | | | | 2/21/2008 | ACP WP | Analysis of potential targets for infringement claims; includes tabs estimating damages and reasonably royalties and a tab showing die thickness measurements of different potential infringers |
| ElmPriv_0467 | | | | 2/22/2008 | WP | Analysis of potential targets for infringement claims; includes tabs estimating damages and reasonably royalties and a tab showing die thickness measurements of different potential infringers |
| ElmPriv_0472 | | | | 3/31/2008 | ACP WP | Analysis of potential targets for infringement claims; includes tabs estimating damages and reasonably royalties and a tab showing die thickness measurements of different potential infringers |

These documents are all spreadsheets. We don't know who prepared them or who allegedly directed that they be prepared. I have examined them and I cannot find that they were prepared in anticipation of litigation, at the direction of counsel, or to facilitate the provision of legal advice. They might well have been. But, given the nature of Plaintiff's business, another reasonable inference is that they were prepared by a non-attorney to determine which companies to reach out to regarding a licensing deal. *See, e.g., Immersion Corp. v. HTC Corp.*, No. 12-259-RGA, 2014 WL 3948021, at *1 (D. Del. Aug. 7, 2014) (finding "document to be primarily for business purposes as it provides factual information about licensing/royalty rates, the primary purpose of the Plaintiff's business"). On this record, I find that Plaintiff has not met its burden to establish that either the attorney-client privilege or work product doctrine applies.

Documents marked ElmPriv_0405 and ElmPriv_0413 are logged as follows:

| PrivLog ID | From | To | CC | Date | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|
| ElmPriv_0405 | | | | 2/21/2006 | WP | Draft report re thin film stress measurements prepared in anticipation of patent infringement litigation; analysis of technical results of TAEUS report |
| ElmPriv_0413 | | | | 5/3/2006 | WP | Draft report from Ilan Blech titled "Report of Stress Measurements of films deposited on thin dice"; prepared in anticipation of litigation |

These documents contain stress measurements. But there is nothing on the face of the document or any extrinsic evidence that suggests that they were prepared in anticipation of litigation. While it is certainly possible that they were, it is also possible that the documents were prepared as part of an investigation conducted for business purposes or that they were created by a third party for purposes unrelated to Plaintiff's legal or business interests. We do not know anything about the author of 0405 or why it was created. Although we do know that ElmPriv_0413 was created by

Ilan Blech in 2006, I do not know who Ilan Blech is (was he an employee or consultant of Elm or a third party), what litigations, if any, were ongoing or imminent in 2006, or the purpose for which the document was created. There are simply too many unknowns to conclude that these documents must have been, or were even more likely than not, created in anticipation of litigation.

The same concerns also apply to the rest of the documents in this category. All 12 documents in this category must be produced.

### B. Communications between Leedy and Epstein

There are 150 documents in this category, which contains communications between Mr. Leedy and Mr. Epstein (and/or other employees at Epstein's company, Epicenter IP, LLC). Mr. Epstein is an attorney, but Plaintiff acknowledges that Mr. Epstein was not always acting as an attorney for Elm. Defendants contend that these communications are not privileged because they primarily relate to business matters. Plaintiff argues that the disputed communications are privileged because they primarily relate to issues on which Mr. Epstein and his colleagues provided legal advice.

I have reviewed the documents at issue, and I agree with Plaintiff on the majority of the documents in this category. Some of the documents are clearly privileged. I conclude that others are primarily directed to legal (as opposed to business) advice. None of those privileged documents need to be produced and I will not discuss them further.

I do have some concerns about Plaintiff's privilege claims with respect to the following three groups of documents. The first group consists of documents that Plaintiff withheld in their entirety but that should be redacted in part and produced.[4] Most, if not all of the documents in this

---

[4] The following documents belong to this group and should be appropriately redacted and produced: ElmPriv_1118; ElmPriv_1149; ElmPriv_1150; ElmPriv_1172.

group are email "chains" where some links on the chain consist of communications with third parties. Communications with third parties are obviously not protected by the attorney-client privilege. The documents should be appropriately redacted and produced. For example, ElmPriv_1050 contains communications between Elm's counsel and representatives from third party SK Hynix. Those communications are not privileged. The top communication is protected by the attorney-client privilege and may be redacted. Similarly, ElmPriv_1118 contains communications between Plaintiff's counsel and a representative from third party IBM. Again, those communications are not privileged and should be produced. The top two communications appear to contain attorney-client privileged information, however, and may be redacted before production.

The next group of documents consist of emails that attach what appear to be non-privileged documents.[5] For example, ElmPriv_1162 is an email from Leedy to Epstein and another Epicenter

---

I also note that ElmPriv_1050 is identical to ElmPriv_1047 which has been appropriately redacted. ElmPriv_1050 should be given redactions consistent with those found on ElmPriv_1047 and produced with those redactions. Several other related documents that were treated differently are: ElmPriv_1053 and ElmPriv_1056; ElmPriv_1100 and ElmPriv_1106; ElmPriv_1126 and ElmPriv_1133. Those documents should be reviewed, and the redactions should be made consistent. The documents that were previously withheld in their entirety should be produced with the appropriate redactions.

[5] This group includes the following: ElmPriv_1061 and ElmPriv_1062; ElmPriv_1113 and ElmPriv_1114; ElmPriv_1162 and ElmPriv_1163; ElmPriv_1211 and ElmPriv_1212; ElmPriv_1215 and ElmPriv_1216; ElmPriv_1225 and ElmPriv-1226; ElmPriv_1231, ElmPriv_1232 and ElmPriv_1233; ElmPriv_1243 and ElmPriv_1244; ElmPriv_1246, ElmPriv_1247 and ElmPriv_1248; ElmPriv_1249 and ElmPriv_1250; ElmPriv_1263, ElmPriv_1264 and ElmPriv_1265; ElmPriv_1275, ElmPriv_1276 and ElmPriv_1277; ElmPriv_1283 and ElmPriv_1284; ElmPriv_1286 and ElmPriv_1287; ElmPriv_1294 and ElmPric_1295; ElmPriv_1328 and ElmPriv_1329; ElmPriv_1392 and ElmPriv_1393; ElmPriv_1588, ElmPriv_1589 and ElmPriv_1590; ElmPriv_1061 and ElmPriv_1062; ElmPriv_1708 and ElmPriv_1709; ElmPriv_1869 and ElmPriv_1877.

employee. The email attaches an article (ElmPriv_1163) that appears to be publicly available and would clearly not be privileged standing alone.

Courts have taken varying approaches regarding the privilege claims over email attachments. *Compare, e.g.*, *Willis Elec. Co. v. Polygroup Trading Ltd.*, No. 15-3443-WMW-KMM, 2021 WL 568454, at *7 (D. Minn. Feb. 16, 2021) *with Doe v. Intermountain Health Care, Inc.*, No. 18-807-RJS-JCB, 2021 WL 425117, at *6 (D. Utah Feb. 8, 2021). I don't need to get into the weeds on all the ways that attachments might be privileged because, in this case, I only need to decide how to handle emails between privileged persons that attach articles that are clearly not privileged standing alone.

Here is how I see it. The emails themselves demonstrate that the client sender (or client recipient) had the non-privileged article in their possession because at one point they sent (or received) it. The client cannot immunize discovery of those articles merely because they were sent to (or received from) their lawyer. Nor can the client conceal the fact that they were and are in possession of those articles. On the other hand, I am sensitive to the possibility that the fact that a client sent (or received) a particular article to (or from) his attorney on a certain date can implicate privilege concerns.[6] *See Willis Elec.*, 2021 WL 568454, at *7.

In view of the foregoing, this is how the parties should proceed with respect to this group.[7] Plaintiff must either (1) produce the non-privileged attachments[8] or (2) if Plaintiff contends that

---

[6] Having reviewed the attachments at issue here, I'm skeptical that they are relevant to any claims or defenses in this case. However, I imagine there could be a situation where an individual's possession of a non-privileged article might be relevant in a patent case.

[7] *See* n.5, *supra*.

[8] The parties should meet and confer if there is a dispute regarding how these documents should be produced. The parties should be able to figure out a way do to this consistent with the principles outlined above.

the act of sending a particular attachment is privileged, confirm that the attachment has already been produced in discovery under circumstances that demonstrate which custodians had possession of it.[9]

The final group of documents I will require to be produced are those where the communication is setting up a call. The redacted portions of ElmPriv_1624 solely relate to setting up a call. No legal advice is requested or provided; the participants are engaged in scheduling. Such communications are not privileged and should be produced. The following documents are part of the same email chain and should also be produced without redactions: ElmPriv_1625; ElmPriv_1626; ElmPriv_1627; and ElmPriv_1628. I do not know of what use those documents will be to Defendants, but they are not privileged.

### C. Communications between Leedy and Ure

The next category of documents concerns communications between Mr. Leedy and Michael Ure, an attorney, who "provided wide-ranging services . . . including patent prosecution, business advice, and licensing strategy." (D.I. 433 at 4.) Like the Leedy-Epstein communications, Defendants argue that the documents in this category are directed primarily towards business purposes. Plaintiff contends that although some communications between Leedy and Ure were for business purposes, those currently being withheld primarily involve the provision of legal advice.

---

[9] Alternatively, Plaintiff may choose to simply produce the emails with the attachments. Plaintiff's choice to take that option shall not be deemed to operate as a broad subject matter waiver.

Based on the documents before me and the representations that Plaintiff has made in its privilege log, I cannot find that these emails were more likely seeking business as opposed to legal advice.[10] Accordingly, they need not be produced.

However, ElmPriv_0023 and ElmPriv_0024 are email attachments that appear to be publicly available articles. They are subject to the same ruling on email attachments set forth above.

### D. Contingent Fee Engagement Letter

The last document is a Contingent Fee Engagement Letter between Glenn Leedy and Epicenter Law, P.C. Plaintiff has produced this document with redactions. Defendants argue that the redactions are inappropriate. I agree with Defendants.

Plaintiff has designated Mr. Epstein as its sole Rule 30(b)(6) witness. The Contingent Fee Engagement Letter discusses the compensation to be paid to Epstein. Having previously concluded that the Contingent Fee Engagement Letter has some potential relevance to bias, I ordered that it be produced. I also stated that relevance redactions were inappropriate but that the document may be redacted to the extent it contained some privileged information. I have reviewed the provisions that are currently being redacted by Plaintiff and they do not constitute privileged information. They are contract terms. The agreement should be produced in unredacted form.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1. Plaintiff shall produce additional documents, as set forth above.

---

[10] I made this finding in acknowledgment that there are often overlapping business and legal concerns when it comes to patents.

2. Plaintiff has met its burden to show that the remaining disputed documents are protected by the attorney-client privilege, work product doctrine, or both and thus need not be produced.

Dated: October 15, 2021

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE